ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL INDICTMENT |
| v. : | |
| : | NO. 1:06-CR-382-JTC |
| JARED ROBERT WHEAT : | |
| STEPHEN D. SMITH : | (Superseding) |
| TOMASZ HOLDA : | |
| SERGIO OLIVEIRA : | |
| HI-TECH PHARMACEUTICALS, INC. : | |
| d/b/a Planet Pharmacy, Target : | |
| Data, Target Data Processing, : | |
| Pegasus Resources, Global : | |
| Pharmacy and Generic Limited : | |

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

At all times relevant to this Indictment:

### CONTROLLED SUBSTANCES ACT AND RELEVANT SUBSTANCES

1. The Controlled Substances Act governed the manufacture, distribution, and dispensing of controlled substances in the United States.

2. Various prescription drugs were scheduled substances under the Controlled Substances Act. There were five schedules of controlled substances – schedules I, II, III, IV, and V. Drugs were scheduled into these levels based on their potentiality for abuse, among other things. Abuse of Schedule III drugs may lead to moderate or low physical dependence or high psychological dependence. Abuse of Schedule IV drugs may lead to more limited

physical dependence or psychological dependence relative to the drugs or other substances in Schedule III. 21 U.S.C. §§ 812(b)(3) and (4).

3. Title 21, Code of Federal Regulations, Section 1306.04(a) provided:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

4. Oxandrolone, an anabolic steroid, was classified under federal drug laws as a Schedule III controlled substance. 21 C.F.R. § 1308.13(f). Anavar® was a brand name for a prescription drug that contained oxandrolone, and was therefore classified as a Schedule III controlled substance.

5. Oxymetholone, an anabolic steroid, was classified under federal drug laws as a Schedule III controlled substance. 21 C.F.R. § 1308.13(f). Anadrol® was a brand name for a prescription

drug that contained oxymetholone, and was therefore classified as a Schedule III controlled substance.

6. Stanazolol, an anabolic steroid, was classified under federal drug laws as a Schedule III controlled substance. 21 C.F.R. § 1308.13(f). Winstrol® was a brand name for a prescription drug that contained stanazolol, and was therefore classified as a Schedule III controlled substance.

7. Alprazolam, a depressant, was classified under federal drug laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(1). Xanax®, a prescription drug used to treat anxiety, contained alprazolam, and was therefore classified as a Schedule IV controlled substance.

8. Diazepam, a depressant, was classified under federal drug laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(14). Valium®, a prescription drug used to treat anxiety, contained diazepam, and was therefore classified as a Schedule IV controlled substance.

9. Lorazepam, a depressant, was classified under federal drug laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(27). Ativan®, a prescription drug used to treat anxiety, contained lorazepam, and was therefore classified as a Schedule IV controlled substance.

10. Zolpidem tartrate, a depressant, was classified under federal drug laws as a Schedule IV controlled substance. 21 C.F.R.

§ 1308.14(c)(50). Ambien®, a prescription drug used to treat insomnia, contained zolpidem, and was therefore classified as a Schedule IV controlled substance.

11. Phentermine, a stimulant, was classified under federal drug laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(e)(9).

## FEDERAL FOOD, DRUG, AND COSMETIC ACT AND RELEVANT DRUGS

12. The United States Food and Drug Administration ("FDA") was the agency of the United States charged with responsibility for protecting the health and safety of the American public by assuring, among other things, that drugs sold to humans were safe and effective for their intended uses and bore labeling containing true and accurate information. The FDA's responsibilities included regulating the manufacture, labeling, and distribution of prescription drugs shipped or received in interstate commerce.

13. The FDA was also responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act ("FD&C Act"), 21 U.S.C. § 301 et seq.

14. Under the FD&C Act, the term "drug" included articles which were (1) intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans; or (2) intended to affect the structure or any function of the human body. 21 U.S.C. §§ 321(g)(1)(B) and (C).

4

15. Some drugs regulated under the FD&C Act were "prescription drugs." Prescription drugs were those drugs, which because of their toxicity or other potentiality for harmful effect, or the method of their use, or the collateral measures necessary for their use, were not safe for use except under supervision of a practitioner licensed by law to administer such drugs, or which were required to be administered under the professional supervision of a practitioner licensed by law to administer such drug as a condition of FDA approving the drug pursuant to 21 U.S.C. § 355 to be placed on the market. 21 U.S.C. §§ 353(b)(1)(A) and (B).

16. Under the FD&C Act, the act of dispensing -- a term which includes selling -- a prescription drug without a valid prescription from a practitioner licensed by law to administer such drug resulted in the drug being misbranded while held for sale. In other words, it was a crime to sell prescription drugs without a prescription. 21 U.S.C. § 353(b)(1).

17. A drug was adulterated under the FD&C Act if, among other things: it consisted in whole or in part of any filthy, putrid, or decomposed substance; it had been prepared, packed, or held under insanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health; the methods used in, or the facilities or controls used for, its manufacture, processing, packing, or holding did not conform to or were not operated or administered in conformity with current good

5

manufacturing practice so as to assure that such drug met regulatory and statutory requirements as to safety and had the identity and strength, and met the quality and purity characteristics, which it purported or was represented to possess; or it purported to be or was represented as a drug the name of which is recognized in an official compendium, and its strength differed from, or its quality or purity fell below, the standard set forth in such compendium. 21 U.S.C. § 351.

18. A drug was misbranded under the FD&C Act if, among other things: its labeling was false or misleading in any particular; the labeling on the drug did not bear adequate directions for use; or the labeling on the drug did not bear such adequate warnings against use in those pathological conditions, and by children where its use may be dangerous to health, and against unsafe dosage and methods and duration of administration and application, in such manner and form, as were necessary for the protection of users. 21 U.S.C. § 352.

19. The FD&C Act further prohibited the introduction, delivery for introduction, or causing the introduction or delivery for introduction into interstate commerce of any adulterated or misbranded drug. 21 U.S.C. § 331(a).

20. The term "label" was defined in the FD&C Act as a display of written, printed, or graphic matter upon the immediate container of any article. 21 U.S.C. § 321(k). The term "labeling" was

defined in the FD&C Act as all labels and other printed or graphic matter (a) upon any article or any of its containers or wrappers or (b) accompanying such article. 21 U.S.C. § 321(m).

21. "Adequate directions for use" was defined by regulation to mean "directions under which the layman can use a drug safely and for the purposes for which it is intended." See 21 C.F.R. § 201.5. The "intended use" of a drug referred to "the objective intent of the persons legally responsible for the labeling of drugs." See 21 C.F.R. § 201.128. "The intent is determined by such persons' expressions or may be shown by the circumstances surrounding the distribution of the article" and "may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives." Id.

22. Atorvastatin, sold in the United States as Lipitor®, was indicated for the treatment of high cholesterol, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

23. Celecoxib, sold in the United States as Celebrex®, was indicated for the treatment of pain, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

24. Clobenzorex was indicated for the treatment of weight loss, but was not sold in the United States. It was a prescription

drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

25. Clomiphene, sold in the United States as Clomid®, was indicated for the treatment as a fertility drug, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

26. Esomeprazole, sold in the United States as Nexium®, was indicated for the treatment of gastroesophogeal reflux disease, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

27. Lovastatin, sold in the United States as Mevacor®, was indicated for the treatment of high cholesterol, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

28. Rofecoxib, was sold in the United States as Vioxx®, was indicated for the treatment of pain, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

29. Setraline, sold in the United States as Zoloft®, was indicated for the treatment of depression, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

30. Sildenafil citrate, sold in the United States as Viagra®, was indicated for the treatment of erectile dysfunction, and was a

prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

31. Tadalafil, sold in the United States as Cialis®, was indicated for the treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

32. Tamoxifen, sold in the United States as Nolvadex®, was indicated for the treatment of breast cancer, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

33. Vardenafil, sold in the United States as Levitra®, was indicated for the treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

34. Oxandrolone (Anavar®), Oxymetholone (Anadrol®), Stanazolol, Alprazolam (Xanax®), Diazepam (Valium®), Lorazepam (Ativan®), Zolpidem (Ambien®), and Phentermine, described as controlled substances in paragraphs 4-11 above, were also prescription drugs within the meaning of Title 21, United States Code, Sections 353(b)(1)(A) and (B).

35. Under the FD&C Act, a "new drug" meant any drug the composition of which is such that the drug is not generally recognized among experts as safe and effective for use under the

conditions prescribed, recommended, or suggested in the labeling thereof. 21 U.S.C. § 321(p)(1).

36. Under the FD&C Act, a "new drug" could not be distributed in interstate commerce unless the person who sought to distribute the drug demonstrated to the satisfaction of the FDA that the drug was safe and effective for each of its intended uses, and there was in effect for such drug an approval of a new drug application pursuant to 21 U.S.C. § 355(b), or an investigational new drug submission pursuant to 21 U.S.C. § 355(i), or an abbreviated new drug application pursuant to 21 U.S.C. § 355(j). 21 U.S.C. §§ 355(a), (d), 331(d).

## DEFENDANTS

37. Defendant HI-TECH PHARMACEUTICALS, INC., d/b/a Planet Pharmacy, Target Data, Target Data Processing, Pegasus Resources, Global Pharmacy, and Generic Limited ("HI-TECH") was a company based in Norcross, Georgia, within the Northern District of Georgia, whose business included the foreign manufacture and subsequent illegal importation of prescription drugs, including controlled substances, for distribution and sale in the United States. HI-TECH's foreign manufacturing facility was in Belize. HI-TECH and the other Defendants imported into the United States and distributed various generic versions of prescription drugs, including controlled substances, all of which had been manufactured at HI-TECH's Belize facility. HI-TECH and the other Defendants

10

also maintained and marketed various websites from which individuals in the United States were able to order the prescription drugs, including controlled substances, manufactured by HI-TECH and the other Defendants at the Belize facility.

38. Defendants JARED ROBERT WHEAT, STEPHEN D. SMITH, and TOMASZ HOLDA were three of the persons who owned and operated Defendant HI-TECH.

39. Defendant SERGIO OLIVEIRA and others, including co-conspirators Steve Blinder, David Brady, David Johnson, Brad Watkins, and David Watkins, were employed by and worked for or with Defendant HI-TECH in the United States and/or Belize in various capacities, including manufacturing, marketing, sales and distribution of prescription drugs, including controlled substances, to include the prescription drugs and controlled substances manufactured at defendant HI-TECH's Belizean facility.

## COUNT ONE
### (18 U.S.C. § 371 - General conspiracy)

40. The Grand Jury realleges and incorporates by reference herein Paragraphs 1 through 39 of this Indictment.

41. From in or about July 2001 and continuing through in or about January 2006, in the Northern District of Georgia and elsewhere, the defendants

JARED ROBERT WHEAT
STEPHEN D. SMITH
TOMASZ HOLDA
SERGIO OLIVEIRA
HI-TECH PHARMACEUTICALS, INC.,

11

d/b/a Planet Pharmacy, Target
Data, Target Data Processing,
Pegasus Resources, Global
Pharmacy and Generic Limited

and others known and unknown to the Grand Jury, including but not
limited to Steve Blinder, David Brady, Gary Calow, David Johnson,
Brad Watkins, and David Watkins, did willfully and knowingly
combine, conspire, confederate, agree and have a tacit
understanding with each other and others known and unknown to the
Grand Jury to commit certain offenses against the United States,
namely:

A.   To knowingly devise and intend to devise a scheme and
     artifice to defraud individuals seeking prescription
     drugs and to obtain money from said individuals by means
     of materially false and fraudulent pretenses, promises,
     and representations, and to cause items to be mailed in
     the United States Mails and by private interstate
     commercial carriers in furtherance of said scheme and
     artifice to defraud in violation of Title 18, United
     States Code, Section 1341;

B.   To knowingly devise and intend to devise a scheme and
     artifice to defraud individuals seeking prescription
     drugs and to obtain money from said individuals by means
     of materially false and fraudulent pretenses, promises,
     and representations, and to cause interstate wire
     communications to be made in furtherance of said scheme

12

and artifice to defraud, in violation of Title 18, United States Code, Section 1343;

C.  To introduce and deliver for introduction into interstate commerce, and to cause the introduction and delivery for introduction into interstate commerce of adulterated drugs with the intent to defraud and mislead, in violation of Title 21, United States Code, Sections 331(a), 333(a)(2) and 351;

D.  To introduce and deliver for introduction into interstate commerce, and to cause the introduction and delivery for introduction into interstate commerce of misbranded drugs with the intent to defraud and mislead, in violation of Title 21, United States Code, Sections 331(a), 333(a)(2) and 352; and

E.  To introduce and deliver for introduction into interstate commerce, and to cause the introduction and delivery for introduction into interstate commerce unapproved new drugs with the intent to defraud and mislead, in violation of Title 21, United States Code, Sections 331(d), 333(a)(2) and 355(a).

## MANNER AND MEANS

42.  It was part of the conspiracy that the Defendants and their co-conspirators would operate internet sites, including canadiangenerics.com, genericviagra.bz, genericpharmacy.bz,

13

targetdata.bz and planetpharmacy.bz, which offered prescription drugs, including controlled substances, for sale without a prescription. The websites made such false claims as the drugs being manufactured and imported from Canada, falsely stated that all pharmaceuticals purchased via the website were manufactured using good manufacturing practices, and falsely stated that a licensed medical doctor would review the on-line questionnaire for the drugs before authorizing the prescription.

43. It was further part of the conspiracy that Defendants would manufacture such drugs in Belize in non-sterile conditions and without using good manufacturing practices. Defendants JARED ROBERT WHEAT, STEPHEN D. SMITH, TOMASZ HOLDA, and SERGIO OLIVEIRA, and others would periodically travel to Belize from the United States, including from the Northern District of Georgia, to manufacture the drugs. The Defendants hired Belizeans to work in and manage the day-to-day distribution operations of the Belize manufacturing and distribution center, but only the Defendants were permitted to mix and manufacture the drugs.

44. It was also part of the conspiracy that, in order to make the drugs, Defendants would import active pharmaceutical ingredients ("API") into Belize from other countries, including China. Defendants then manufactured prescription drugs, including controlled substances, such as:

14

| GENERIC NAME | BRAND NAME |
|---|---|
| | |
| Schedule III Controlled Substances (Steroids) | |
| Oxandrolone | Anavar |
| Oxymetholone | Anadrol |
| Stanazolol | Winstrol |
| | |
| Schedule IV Controlled Substances | |
| Alprazolam | Xanax |
| Diazepam | Valium |
| Lorazapam | Ativan |
| Phentermine | |
| Zolpidem | Ambien |
| | |
| Prescription Drugs | |
| Atorvastatin | Lipitor |
| Celecoxib | Celebrex |
| Clobenzorex | Clobenzorex |
| Clomiphene | Clomid |
| Esomeprazole | Esomeprazole |
| Lovastatin | Mevacor |
| Rofecoxib | Vioxx |
| Setraline | Zoloft |
| Sildenafil Citrate | Viagra |
| Tadalafil | Cialis |
| Tamoxifen | Nolvadex |
| Vardenafil | Levitra |

45. It was further part of the conspiracy that the Defendants would send these prescription drugs, including controlled substances, from Belize to customers in the United States via United States mail and private commercial interstate carriers.

46. It was also part of the conspiracy that the Defendants would sell bulk quantities of these prescription drugs, including controlled substances, to wholesale resellers. The Defendants would then fill "retail" orders on behalf of the resellers and ship the prescription drugs, including controlled substances, to customers in the United States as directed by the resellers.

## OVERT ACTS

47. In furtherance of this conspiracy and to effect and accomplish the objects thereof, the following overt acts, among others, were committed in the Northern District of Georgia and elsewhere:

A. On or about July 9, 2001, co-conspirator David Brady corresponded with an attorney regarding the legality of making drugs overseas and shipping them into the United States without FDA approval.

B. On or about September 20, 2001, a Belizean employee of defendant HI-TECH registered the website www.planetpharmacy.bz on behalf of defendants HI-TECH and JARED ROBERT WHEAT.

C. On or about November 5, 2001, two Belizean employees of defendant HI-TECH faxed a letter to Universal Customs Brokers (UCB)

16

to engage UCB to handle customs and import brokerage services for defendant HI-TECH, d/b/a Target Data Processing, Ltd.

D.    On or about November 29, 2001, defendant HI-TECH in the Northern District of Georgia ordered 50 kilograms of Phentermine HCL to be shipped to Belize. This order was pre-paid by defendant JARED ROBERT WHEAT by way of a personal check in the amount of $87,500, purchased in the name of Hi-Tech Pharmaceutical.

E.    On or about February 21, 2002, defendant HI-TECH in the Northern District of Georgia, aided by a Belizean employee of HI-TECH, caused a blending machine, approximately 100,000 bottles/caps/seals and other pill-making equipment to be sent to HI-TECH's manufacturing facility in Belize. This order was paid by way of a check from defendant HI-TECH, and authorized by defendant JARED ROBERT WHEAT.

F.    On or about March 20, 2002, defendant JARED ROBERT WHEAT prepared formula cards for mixing and manufacturing a generic version of Viagra.

G.    On or about July 2, 2002, defendant JARED ROBERT WHEAT sent a fax from defendant HI-TECH in the Northern District of Georgia to a bank in Belize directing a transfer of US$50,000 from a defendant HI-TECH account to a Target Data, Ltd., account.

H.    In or around August 2002, defendant HI-TECH in the Northern District of Georgia ordered additional pill punches and dies to be shipped to Belize. This order was paid by way of a

17

credit card charge to an account controlled by defendant JARED ROBERT WHEAT.

I. On or about October 15, 2002, defendant JARED ROBERT WHEAT in the Northern District of Georgia wired US$92,500 to New Chemic, a supplier of pharmaceutical ingredients, to pay for five kilograms of oxandrolone, an anabolic steroid, to be shipped from China to defendant HI-TECH's facility in Belize.

J. On or about October 29, 2002, an employee at defendant HI-TECH's facility in Belize sent a fax to defendant JARED ROBERT WHEAT in the Northern District of Georgia regarding payment of bills.

K. On or about February 19, 2003, defendant HI-TECH in the Northern District of Georgia caused a pill press, a pill counting machine and other items used to make pills to be shipped to defendant HI-TECH's facility in Belize.

L. On or about April 3, 2003, defendant JARED ROBERT WHEAT in the Northern District of Georgia ordered ten kilograms of Alprazolam (the active ingredient in Xanax®) and ten kilograms of Zolpidem (the active ingredient in Ambien®) to be shipped to defendant HI-TECH's facility in Belize and subsequently wired US$26,500 from Belize to pay for these drugs.

M. On or about June 2, 2003, defendant JARED ROBERT WHEAT and defendant HI-TECH in the Northern District of Georgia paid

US\$96,075 to New Chemic for additional raw materials to be shipped from China to Belize.

N. In or around August 2003, defendants STEPHEN D. SMITH and TOMASZ HOLDA traveled from the Northern District of Georgia to Belize.

O. On or about August 8, 2003, defendant SERGIO OLIVEIRA exchanged e-mails with nethollywood.net concerning his desire to have traffic on the targetdata.bz website re-directed to the planetpharmacy.bz website.

P. On or about September 29, 2003, defendant JARED ROBERT WHEAT in the Northern District of Georgia ordered and paid for a shipment of 50 kilograms of Phentermine HCL to be shipped to defendant HI-TECH's facility in Belize.

Q. In or around October 2003, defendant TOMASZ HOLDA traveled from the Northern District of Georgia to Belize.

R. On or about October 9, 2003, defendant SERGIO OLIVEIRA sent a fax from his company, New You, Inc., to Pegasus Resources containing a spreadsheet listing dozens of orders for Planet Pharmacy to send drugs, including Schedule IV controlled substances, to customers in the United States.

S. On or about November 10, 2003, defendant SERGIO OLIVEIRA exchanged e-mails with unindicted co-conspirator Gary Calow regarding Gary Calow's order for additional drugs, including Schedule III and Schedule IV controlled substances.

T. On or about November 14 and November 23, 2003, co-conspirator David Brady directed customer service employees of defendant HI-TECH to send an e-mail to customers indicating that 820 orders were lost and needed to be re-sent. David Brady directed that a fictitious name be used for the customer support representative sending the e-mail to customers.

U. In or around December 2003, defendants JARED ROBERT WHEAT, STEPHEN D. SMITH, and TOMASZ HOLDA, accompanied by co-conspirator Brad Watkins, traveled from the Northern District of Georgia to Belize.

V. On or about December 25, 2003, defendant SERGIO OLIVEIRA sent an e-mail to unindicted co-conspirator Gary Calow asking about shipping times for fulfilling orders for United States customers.

W. On or about February 7, 2004, defendant STEPHEN D. SMITH received a Federal Express package in the Northern District of Georgia from an employee at defendant HI-TECH's facility in Belize labeled "documents."

X. On or about February 11, 2004, defendant SERGIO OLIVEIRA and unindicted co-conspirator Gary Calow exchanged e-mails regarding communicating through encrypted e-mails.

Y. On or about February 17, 2004, defendant SERGIO OLIVEIRA forwarded to unindicted co-conspirator Gary Calow a copy of an e-mail he had previously sent to an employee at defendant HI-TECH's

facility in Belize discussing options for shipping drugs into the United States.

Z. In or around March 2004, defendants JARED ROBERT WHEAT, STEPHEN D. SMITH, and TOMASZ HOLDA, accompanied by co-conspirator Brad Watkins, traveled from the Northern District of Georgia to Belize.

AA. On or about March 14, 2004, defendant SERGIO OLIVEIRA sent a fax to a HI-TECH employee in Belize referencing various topics, including requesting information regarding FedEx shipments sent to Miami.

BB. On or about March 15, 2004, defendant SERGIO OLIVEIRA sent a fax to defendant HI-TECH in Belize containing discussion topics for defendants STEPHEN D. SMITH and JARED ROBERT WHEAT related to defendant HI-TECH's business in Belize.

CC. In or around April 2004, defendant JARED ROBERT WHEAT in the Northern District of Georgia ordered additional pharmaceutical ingredients to be shipped to Belize.

DD. On or about April 14, 2004, defendant JARED ROBERT WHEAT traveled from the Northern District of Georgia to Belize and deposited US$850,567.98 that he had withdrawn from a bank in the Northern District of Georgia into a Belize bank account controlled by defendants JARED ROBERT WHEAT and HI-TECH.

EE. On or about April 22, 2004, defendant SERGIO OLIVEIRA forwarded an e-mail to an employee at defendant HI-TECH's facility

21

in Belize regarding a customer in Oklahoma who had purchased drugs from one of defendant HI-TECH's websites.

FF.  On or about April 26, 2004, defendant TOMASZ HOLDA in the Northern District of Georgia wrote a check to New Chemic to pay for Alprazolam (the active ingredient in Xanax®) and Zolpidem (the active ingredient in Ambien®) to be shipped from China to defendant HI-TECH's facility in Belize.

GG.  On or about April 29, 2004, defendant TOMASZ HOLDA in the Northern District of Georgia wrote a check to Americhem to pay for pharmaceutical ingredients to be shipped to defendant HI-TECH's facility in Belize.

HH.  On or around May 14, 2004, defendant STEPHEN D. SMITH traveled from the Northern District of Georgia to Belize.

II.  On or about May 28, 2004, defendant SERGIO OLIVEIRA forwarded to unindicted co-conspirator Gary Calow a copy of an e-mail OLIVEIRA had previously sent to a Belizean employee of defendant HI-TECH listing the Planet Pharmacy inventory at that time.  The document indicated that there were over 4 million pills, including Schedule III and IV controlled substances and other prescription medications in inventory.

JJ.  On or about June 29, 2004, defendant JARED ROBERT WHEAT sent a letter to a bank in Belize directing that a wire transfer of US$60,000 be made from an account controlled by defendant HI-TECH

22

d/b/a Target Data Processing to RIA International, LLC, to pay for raw materials for manufacturing pills.

KK. On or about July 2, 2004, a Belizean employee of defendant HI-TECH sent documents via Federal Express from HI-TECH's drug manufacturing facility in Belize to defendant STEVEN D. SMITH at defendant HI-TECH's headquarters in the Northern District of Georgia.

LL. On or about July 26, 2004, defendant JARED ROBERT WHEAT ordered the transfer of US$850,000 from a Belizean bank account that he and defendant HI-TECH controlled to a law firm in Birmingham, Alabama.

MM. On or about September 17, 2004, defendant JARED ROBERT WHEAT in the Northern District of Georgia directed that a bank account in Belize controlled by defendant HI-TECH be closed and that the money in the HI-TECH account -- in excess of $1.7 million -- be wired to a Panamanian bank account controlled by WHEAT.

NN. On or about September 28, 2004, defendants JARED ROBERT WHEAT and TOMASZ HOLDA in the Northern District of Georgia paid for ten kilograms of Atorvastatin (an active ingredient in Lipitor®) and ten kilograms of Paroxetine (an active ingredient in Mevacor®) to be shipped to defendant HI-TECH's facility in Belize.

OO. On or about February 5, 2005, defendant SERGIO OLIVEIRA sent unindicted co-conspirator Gary Calow an e-mail regarding orders for American customers.

23

PP. In or around March 2005, defendants JARED ROBERT WHEAT and STEVEN D. SMITH, along with co-conspirators Brad Watkins and David Watkins, traveled to Belize where they manufactured generic versions of Phentermine and Xanax, both Schedule IV controlled substances.

QQ. In or around January 2006, defendant JARED ROBERT WHEAT, along with co-conspirators David Brady and David Watkins, manufactured hundreds of thousands of pills containing Schedule IV controlled substances, including alprazolam, diazepam, and zolpidem, at defendant HI-TECH's corporate and manufacturing headquarters in the Northern District of Georgia. These drugs were made in the same facility using the same equipment used by defendant HI-TECH to manufacture certain nutraceuticals and herbal supplements that defendant HI-TECH sells to various drugs stores and other retail outlets in the United States.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### (21 U.S.C. § 963 – Drug importation conspiracy)

48. The Grand Jury realleges and incorporates by reference herein Paragraphs 1 through 47 of this Indictment.

49. From in or about July 2000 and continuing through in or about March 2005, in the Northern District of Georgia and elsewhere, the defendants

JARED ROBERT WHEAT
STEPHEN D. SMITH
TOMASZ HOLDA

24

SERGIO OLIVEIRA
HI-TECH PHARMACEUTICALS, INC.,
d/b/a Planet Pharmacy, Target
Data, Target Data Processing,
Pegasus Resources, Global
Pharmacy and Generic Limited

did knowingly and intentionally combine, conspire, confederate, agree and have a tacit understanding with each other and others known and unknown to the Grand Jury, including but not limited to co-conspirators Steve Blinder, David Brady, Gary Calow, David Johnson, Brad Watkins, and David Watkins, to violate Title 21, United States Code, Sections 952(b) and 960(a)(1), that is, to knowingly and intentionally import and attempt to import into the United States from Belize anabolic steroids, Schedule III controlled substances, and to knowingly and intentionally import and attempt to import into the United States from Belize Schedule IV controlled substances, that is, Alprazolam, Diazepam, Lorazapam, Phentermine and Zolpidem, other than for a legitimate medical purpose and not in the course of professional practice, all in violation of Title 21, United States Code, Sections 952(b), 960(a)(1), 960(b)(4), and 963.

## COUNT THREE
(21 U.S.C. § 846 - Drug distribution conspiracy)

50. The Grand Jury realleges and incorporates by reference herein Paragraphs 1 through 47 of this Indictment.

25

51. From in or about July 2000 and continuing through in or about January 2006, in the Northern District of Georgia and elsewhere, the defendants

JARED ROBERT WHEAT
STEPHEN D. SMITH
TOMASZ HOLDA
SERGIO OLIVEIRA
HI-TECH PHARMACEUTICALS, INC.
d/b/a Planet Pharmacy, Target
Data, Target Data Processing,
Pegasus Resources, Global
Pharmacy and Generic Limited

did knowingly and intentionally combine, conspire, confederate, agree and have a tacit understanding with each other and others known and unknown to the Grand Jury, including but not limited to co-conspirators Steve Blinder, David Brady, Gary Calow, David Johnson, Brad Watkins, and David Watkins, to commit violations of Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally possess with the intent to distribute anabolic steroids, a Schedule III controlled substance, and to knowingly and intentionally possess with the intent to distribute Zolpidem, Diazepam, Alprazolam and Lorazapam, all Schedule IV controlled substances, other than for a legitimate medical purpose, and not in the course of professional practice, all in violation of Title 18, United States Code, Sections 846, 841(a)(1), 841(b)(1)(D), and 841(b)(2), and Title 21, Code of Federal Regulations, Section 1306.04.

## COUNT FOUR
### (21 U.S.C. § 848 - Continuing criminal enterprise)

52. The Grand Jury realleges and incorporates by reference herein Paragraphs 1 through 47 of this Indictment.

53. Beginning on a date unknown to the Grand Jury and continuing through on or about January 2006, in the Northern District of Georgia and elsewhere, defendant JARED ROBERT WHEAT did knowingly and intentionally engage in a continuing criminal enterprise, in that defendant JARED ROBERT WHEAT

(a) knowingly and intentionally violated Title 21, United States Code Sections 841(a), 846, 952 and 963 as alleged in Counts 2, 3, and 36 through 43 of this Indictment, which Counts are incorporated herein by reference, and that defendant JARED ROBERT WHEAT knowingly and intentionally violated Title 21, United States Code, Sections 841(a), 841(c), and 846 by possessing, and attempting to possess, with intent to distribute GHB, a Schedule I controlled substance, and GBL, a List I chemical, from in or about March 2000 through in or about January 2001, which violations were part of a continuing series of violations of subchapters I and II of the Drug Abuse and Control Act of 1970;

(b) undertook such violations described in paragraph (a) in concert with at least five other persons, known and unknown to the Grand Jury, with respect to whom defendant JARED ROBERT WHEAT occupied a position of organizer, supervisor and manager; and

27

(c) obtained substantial income and resources from these violations;

all in violation of Title 21, United States Code, Sections 848(a) and (c).

### COUNTS FIVE - FOURTEEN
### (18 U.S.C. § 1341 - Mail fraud)

54. The Grand Jury realleges and incorporates by reference herein Paragraphs 1 through 47 of this Indictment.

55. On or about the dates set forth below in Column A, in the Northern District of Georgia and elsewhere, defendants

> JARED ROBERT WHEAT
> STEPHEN D. SMITH
> TOMASZ HOLDA
> SERGIO OLIVEIRA
> HI-TECH PHARMACEUTICALS, INC.
> d/b/a Planet Pharmacy, Target
> Data, Target Data Processing,
> Pegasus Resources, Global
> Pharmacy and Generic Limited,

aided and abetted by each other and others known and unknown to the Grand Jury, including but not limited to co-conspirators Steve Blinder, David Brady, David Johnson, Brad Watkins, and David Watkins, and for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud, did knowingly cause to be sent and delivered the drugs referenced in Column B by the United States Postal Service or private interstate commercial carriers to the places identified in Column C:

28

|  | A. | B. | C. |
|---|---|---|---|
| COUNT | DATE OF MAILING | PURPORTED PHARMACEUTICALS | RECIPIENT ADDRESS |
| 5 | 8/8/02 | Viagra (15 pills) | 20410 40th Ave. Ct. E Apt 1A Spanaway, WA 98387-6704 |
| 6 | 2/11/04 | Phentermine (30 pills) | 14625 Baltimore Avenue, Apt. 298 Laurel, MD 20707 |
| 7 | 2/11/04 | Phentermine (30 pills) | 1259 Fairlake Trace, #206 Weston, FL 33226 |
| 8 | 2/11/04 | Xanax (90 pills) | 631 Stanton Lane Weston, FL |
| 9 | 3/1/04 | Phentermine (30 pills) | 614 Orems Road Baltimore, MD 21221 |
| 10 | 3/5/04 | Ambien (30 pills) Viagra (15 pills) Lipitor (30 pills) | 7234 Muncaster Mill Road, #536 Derwood, MD 20855 |
| 11 | 4/17/04 | Viagra (15 pills) | 20410 40th Ave. Ct. E Apt 1A Spanaway, WA 98387-6704 |
| 12 | 5/12/04 | Ambien (30 pills) | 1318 Calder Road Key Largo, FL 33037 |
| 13 | 5/12/04 | Ambien (60 pills) Viagra (60 pills) Lipitor (60 pills) | 7731 Tuckerman Lane, #164 Potomac, MD 20854 |
| 14 | 5/14/04 | Phentermine (30 pills) | 1318 Calder Road Key Largo, FL 33037 |

in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS FIFTEEN - TWENTY-FOUR
(21 U.S.C. § 331 - Introduction of unapproved new drugs)

56.   The Grand Jury realleges and incorporates by reference herein Paragraphs 1 through 47 of this Indictment.

57.   On or about the dates set forth below in Column A, in the Northern District of Georgia and elsewhere, defendants

### JARED ROBERT WHEAT

29

STEPHEN D. SMITH
TOMASZ HOLDA
SERGIO OLIVEIRA
HI-TECH PHARMACEUTICALS, INC.,
d/b/a Planet Pharmacy, Target
Data, Target Data Processing,
Pegasus Resources, Global
Pharmacy and Generic Limited,

aided and abetted by each other, and by others known and unknown to the Grand Jury, including but not limited to co-conspirators Steve Blinder, David Brady, David Johnson, Brad Watkins, and David Watkins, with intent to defraud and mislead, did introduce and deliver for introduction and cause the introduction and delivery for introduction into interstate commerce the unapproved new drugs identified in Column B, said drugs being introduced into interstate commerce from Belize:

| | A. | B. |
|---|---|---|
| COUNT | DATE | PURPORTED PHARMACEUTICALS |
| 15 | 8/8/02 | Viagra (15 pills) |
| 16 | 2/11/04 | Phentermine (30 pills) |
| 17 | 2/11/04 | Phentermine (30 pills) |
| 18 | 2/11/04 | Xanax (90 pills) |
| 19 | 3/1/04 | Phentermine (30 pills) |
| 20 | 3/5/04 | Ambien (30 pills)<br>Viagra (15 pills)<br>Lipitor (30 pills) |
| 21 | 4/17/04 | Viagra (15 pills) |
| 22 | 5/12/04 | Ambien (30 pills) |
| 23 | 5/12/04 | Ambien (60 pills)<br>Viagra (60 pills)<br>Lipitor (60 pills) |
| 24 | 5/14/04 | Phentermine (30 pills) |

in violation of Title 21, United States Code, Sections 331(d), 333(a)(2), and 355(a), and Title 18, United States Code, Section 2.

## COUNTS TWENTY-FIVE - THIRTY-FIVE
### (21 U.S.C. § 331 - Introduction of adulterated drugs)

58. The Grand Jury realleges and incorporates by reference herein Paragraphs 1 through 47 of this Indictment.

59. On or about the dates set forth below in Column A, in the Northern District of Georgia and elsewhere, defendants

> JARED ROBERT WHEAT
> STEPHEN D. SMITH
> TOMASZ HOLDA
> SERGIO OLIVEIRA
> HI-TECH PHARMACEUTICALS, INC.,
> d/b/a Planet Pharmacy, Target
> Data, Target Data Processing,
> Pegasus Resources, Global
> Pharmacy and Generic Limited,

aided and abetted by each other, and by others known and unknown to the Grand Jury, including but not limited to co-conspirators Steve Blinder, David Brady, David Johnson, Brad Watkins, and David Watkins, with intent to defraud and mislead, did introduce and deliver for introduction and cause the introduction and delivery for introduction into interstate commerce the adulterated drugs identified in Column B, said drugs being introduced into interstate commerce from Belize:

|       | A.      | B.                        |
|-------|---------|---------------------------|
| COUNT | DATE    | PURPORTED PHARMACEUTICALS |
| 25    | 8/8/02  | Viagra (15 pills)         |
| 26    | 2/11/04 | Phentermine (30 pills)    |

31

| | A. | B. |
|---|---|---|
| COUNT | DATE | PURPORTED PHARMACEUTICALS |
| 27 | 2/11/04 | Phentermine (30 pills) |
| 28 | 2/11/04 | Xanax (90 pills) |
| 29 | 3/1/04 | Phentermine (30 pills) |
| 30 | 3/5/04 | Ambien (30 pills)<br>Viagra (15 pills)<br>Lipitor (30 pills) |
| 31 | 4/12/04 | Viagra (1,318 pills) |
| 32 | 4/17/04 | Viagra (15 pills) |
| 33 | 5/12/04 | Ambien (30 pills) |
| 34 | 5/12/04 | Ambien (60 pills)<br>Viagra (60 pills)<br>Lipitor (60 pills) |
| 35 | 5/14/04 | Phentermine (30 pills) |

in violation of Title 21, United States Code, Sections 331(a), 333(a)(2), and 351(a), and Title 18, United States Code, Section 2.

### COUNTS THIRTY-SIX - FORTY-THREE
### (21 U.S.C. § 952 - Importation of controlled substances)

60. The Grand Jury realleges and incorporates by reference herein Paragraphs 1 through 47 of this Indictment.

61. On or about the dates set forth below in Column A, in the Northern District of Georgia and elsewhere, defendants

JARED ROBERT WHEAT
STEPHEN D. SMITH
TOMASZ HOLDA
SERGIO OLIVEIRA
HI-TECH PHARMACEUTICALS, INC.,
d/b/a Planet Pharmacy, Target
Data, Target Data Processing,
Pegasus Resources, Global
Pharmacy and Generic Limited,

aided and abetted by each other and others known and unknown to the Grand Jury, including but not limited to co-conspirators Steve Blinder, David Brady, David Johnson, Brad Watkins, and David Watkins, did knowingly, intentionally and unlawfully import into the United States, from a place outside thereof, the Schedule IV controlled substances identified in Column B:

|  | A. | B. |
|---|---|---|
| COUNT | DATE | SCHED. IV CONTROLLED SUBSTANCES |
| 36 | 2/11/04 | Phentermine (30 pills) |
| 37 | 2/11/04 | Phentermine (30 pills) |
| 38 | 2/11/04 | Xanax (90 pills) |
| 39 | 3/1/04 | Phentermine (30 pills) |
| 40 | 3/5/04 | Ambien (30 pills) |
| 41 | 5/12/04 | Ambien (30 pills) |
| 42 | 5/12/04 | Ambien (60 pills) |
| 43 | 5/14/04 | Phentermine (30 pills) |

in violation of Title 21, United States Code, Sections 952(a)(2), 960(a)(1), and 960(b)(4), and Title 18, United States Code, Section 2.

## COUNTS FORTY-FOUR THROUGH FORTY-SIX
(18 U.S.C. § 1343 - Wire fraud)

62. The Grand Jury realleges and incorporates by reference herein, Paragraphs 1 through 47 of this Indictment.

63. On or about the dates set forth in Column A, below, in the Northern District of Georgia and elsewhere, defendant JARED ROBERT WHEAT, for the purpose of executing the aforementioned scheme and artifice to defraud, did transmit and cause to be transmitted in interstate and foreign commerce, by means of wire

33

communication, certain signs, signals, and sounds, that is, defendant JARED ROBERT WHEAT sent fascimiles identified in Column B, below, from the Northern District of Georgia to Belize.

|       | A.      | B.                                                                                   |
|-------|---------|--------------------------------------------------------------------------------------|
| COUNT | DATE    | FACSIMILE                                                                            |
| 44    | 5/16/02 | authorizing transfer of $30,000 from one account in Belize to another                |
| 45    | 7/2/02  | authorizing transfer of $50,000 from one account in Belize to another                |
| 46    | 10/7/02 | authorizing transfer of $73,960 from a bank account in Belize to a bank account in New York . |

All in violation of Title 18, United States Code, Section 1343.

## CRIMINAL FORFEITURE PROVISION

64. All of the allegations set forth in paragraphs 1 through 63 are incorporated herein by reference, as if fully restated.

65. Upon conviction of one or more of the offenses alleged in Counts 1, 5 through 14, and 44 through 46 of this Indictment, defendants JARED ROBERT WHEAT, STEPHEN D. SMITH, TOMASZ HOLDA, SERGIO OLIVEIRA, and HI-TECH PHARMACEUTICALS, INC., d/b/a Planet Pharmacy, Target Data, Target Data Processing, Pegasus Resources, Global Pharmacy, and Generic Limited, shall, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 981(a)(1)(D)(vi), and Title 28, United States Code, Section 2461(c), forfeit to the

34

United States all property, real or personal, which constitutes or is derived from proceeds traceable to such offense(s).

66. Upon conviction of the offense alleged in Count 4 of this Indictment, defendant JARED ROBERT WHEAT shall, pursuant to 21 U.S.C. § 853, forfeit to the United States any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of such violation; any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

67. Upon conviction of one or more of the offenses alleged in Counts 2, 3, and 36 through 43 of this Indictment, defendants JARED ROBERT WHEAT, STEPHEN D. SMITH, TOMASZ HOLDA, SERGIO OLIVEIRA, and HI-TECH PHARMACEUTICALS, INC., d/b/a Planet Pharmacy, Target Data, Target Data Processing, Pegasus Resources, Global Pharmacy, and Generic Limited, shall, pursuant to 21 U.S.C. § 853, forfeit to the United States any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of such violation, and any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

35

68. The property to be forfeited includes, but is not limited

to, the following:

**(A) MONEY JUDGMENT**

A sum of money not less than $19,800,000 in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts 1, 2, 3, 4, 5 through 14, 36 through 43, and 44 through 46 of this Indictment, for which the defendants are jointly and severally liable.

**(B) REAL PROPERTY**

(1) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 5400 Laithbank Lane, Alpharetta, Fulton County, Georgia.

(2) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 5437 Vicksburg Circle, Birmingham, Jefferson County, Alabama.

(3) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at Vista Del Mar, Block 16, Parcel 1999, Belize.

(4) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at Vista Del Mar, Block 16, Parcel 2009, Belize.

(5) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1902 Bruce Road, Atlanta, Dekalb County, Georgia.

(6) All that tract or parcel of land lying and being in the 8th District, 1st Section, Land Lot 1 of Fannin County, Georgia, containing 1.11 acres, more or less, and being shown as Lot 30 of Mountain High, Phase Two, on a plat of survey by Chastain & Associates, P.C., Mark E. Chastain, G.R.L.S. No 2718, dated December 18, 2003, and December 20, 2003, and recorded in Fannin County Records in Plat Hanger D-73, Pages 2-3, Said plat is incorporated herein, by reference hereto, for a full and complete description of the above described property.

Being and intended to be a portion of the same property conveyed by Warranty Deed dated April 28, 2004, from Mountain High Builders, LLC in favor of Ridgeview Properties, LLC and recorded in Fannin County Records in Deed Book 569, Page 270.

Grantor herein grants an easement for ingress and egress, over and across an existing roadway, to the owner of Lot 29 (as shown on of the above-referenced plat of survey), their heirs and /or assigns. Said easement shall not be a mere license, but shall be a right running with the land, and shall inure to the benefit and burden of the Grantees, the owner of Lot 29, their heirs and/or assigns.

Subject to all easements, restrictions and rights-of-way as shown on plat recorded in Fannin County Records in Plat Hanger D-73, Pages 2-3; Plat Hanger D-3, Page 8; and Plat Hanger C-200, Page 7.

Subject to Protective Covenants and Restrictions, Road Easements and Maintenance Agreements along with Water rights, Easements and Maintenance Agreements, for Mountain High Subdivision, Phase Two, recorded in

37

Fannin County Records in Deed Book 563, Pages 655-58.

Subject to Water Service provision and System Maintenance and Repair Agreement and Easement for Mountain High Subdivision, Phase Two, recorded in Fannin County Records in Deed Book 563-62.

Subject Corporation Conveyance of Easement to Blue Ridge Telephone, Co., dba TDS Telecom recorded in Fannin County Records in Deed Book 552, Pages 1-3.

(7) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 320 Harbor Boulevard #905, Sandestin Yacht Club, Destin, Okaloosa County, Florida.

(8) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 9035 Moor Park Run, Duluth, Forsyth County, Georgia.

(9) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1870 Noblin Ridge Trail, Duluth, Gwinnett County, Georgia.

(12) Condominium unit #2804 of the Spire Midtown condominium development, located at 860 Peachtree Street, Atlanta, Fulton County, Georgia.

(C) BANK ACCOUNTS AND OTHER INVESTMENT ACCOUNTS

(1) All funds credited to account #544739727, in the name of Trust Services, at Banco Continental de Panama, SA.

(2) All funds credited to account #1000346974365, in the name of Jared Robert Wheat, at Wachovia Bank.

38

(3) All funds credited to account #2000127489609, in the name of Hi-Tech Pharmaceuticals, Inc., at Wachovia Bank.

(4) All funds credited to account #2000127485098, in the name of Natl Inst for Clinical Weight Loss, at Wachovia Bank.

(5) All funds credited to account #2000127489719, in the name of National Urological Group at Wachovia Bank.

(6) All funds credited to account #70B17154, in the name of Jared R. Wheat, at Merrill Lynch.

(7) All funds credited to account #70B86197, in the name of Jared R. Wheat, at Merrill Lynch.

(8) All funds credited to account #70B85713, in the name of Jared R. Wheat, at Merrill Lynch.

(9) All funds credited to account #891-58Q07, in the name of Stephen D. Smith, at Merrill Lynch.

(10) All funds credited to account #646016399, in the name of Stephen D. Smith, at Morgan Stanley.

(11) All funds credited to account #24003998, in the name of Stephen D. Smith at Cornerstone Bank.

(12) All funds credited to account #1010105934358, in the name of Stephen D. Smith, at Wachovia Bank.

(13) All funds credited to account #1000092992947, in the name of Stephen D. Smith, at Wachovia Bank.

(14) All funds credited to account #1126754, in the name of Stephen D. Smith, at Gainesville Bank & Trust.

(15) All funds credited to account #5145144835, in the name of Tomasz Holda, at BB & T.

(16) All funds credited to account #2AS22D23, in the name of Tomasz Holda, at Merrill Lynch.

(17) All funds credited to account #70B17669, in the name of Tomasz Holda, at Merrill Lynch.

(18) All funds credited to account #70B86196, in the name of Tomasz Holda, at Merrill Lynch.

(21) All funds credited to account #247387, in the name of Felony Records, at Gainesville Bank & Trust.

(22) All funds credited to account #14087264, in the name of Global Financial, at Wachovia Bank.

(23) All funds credited to account #2000021062041, in the name of A Touch of . Class Interior Design, at Wachovia Bank.

(24) All funds credited to account #267419, in the name of Monster Graffix, at Gainesville Bank & Trust.

(25) All funds credited to account #249722, in the name of Monster Graffix, at. Gainesville Bank & Trust.

(26) All funds credited to account #1002295, in the name of PBS Investment Group, LLC, at Atlanta Business Bank.

**(D) CONVEYANCES**

(1) 2003 Jaguar ST8R, VIN SAJDA03V231M63431.

(2) 2001    Jaguar    S-Type,    VIN
        SAJDA01N51FL95883.

    (3) 2000    Mercedes-Benz    S430,    VIN
        WDBNG70J4YA045952.

    (4) 1999    Mercedes-Benz    ML    430,    VIN
        4JGAB72E7XA90800.

    (5) 2000    Ferrari    360    Modena    F,    VIN
        ZFFYR51B000119410.

    (6) 2001    Ford    Expedition,    VIN
        1FMRU17W51LA38461.

    (7) 1998    Mercedes-Benz    E430,    VIN
        WDBJF70F3WA635005.

    (8) 2002    Mercedes-Benz,    VIN
        WDBNG75J42A246699.

    (9) 2004 Hummer H2, VIN 5GRGN23U74H114299.

    (10) 1999    Lincoln    Town    Car,    VIN
         1L1FM81W5XY677831.

    (12) 1996    Fountain    Boat,    Vessel    HIN:
         FGQ35330L596, Official NO 1057358.

    (15) 2006    Maserati    Quattroporte,    VIN
         ZAMCE39A460024317.

69.    If any of the above-described forfeitable property, as a

result of any act or omission of the defendant(s):

    (A) cannot be located upon the exercise
        of due diligence;

    (B) has been transferred or sold to, or
        deposited with, a third party;

    (C) has    been    placed    beyond    the
        jurisdiction of the Court;

    (D) has been substantially diminished in
        value; or

41

(E) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A ___*TRUE*___ BILL

*Unint McClusy*
FOREPERSON

DAVID E. NAHMIAS
UNITED STATES ATTORNEY

RANDY S. CHARTASH
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 121760

DOUGLAS W. GILFILLAN
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 294713

ROBERT C.I. MCBURNEY
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 481070

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
V: 404-581-6000
F: 404-581-6181

42